JOE CONFORTE, Appellant, v. STATE OF NEVADA, Respondent.

No. 4343

June 2, 1961 · · · · · · · · · · · · · · · · · · 362 P.2d 274

(Petition for rehearing denied June 22, 1961.)

*Gordon W. Rice,* of Reno, for Appellant.

*Roger D. Foley,* Attorney General, *William J. Raggio,* District Attorney, Washoe County, *John C. Bartlett,* and *Harold O. Taber,* of Reno, for Respondent.

## O P I N I O N

By the Court, McNamee, J.:

Appellant was convicted by a jury of extortion in violation of NRS 205.320 which provides, in part, that every person who, with intent to influence the action of any public officer shall threaten directly or indirectly to accuse any person of a crime, or to publish or connive at publishing any libel, or to expose or impute to any person any disgrace, or to expose any secret, shall be punished by imprisonment in the state prison or by imprisonment in the county jail or by a fine or by both fine and imprisonment.

Appeal herein is from the judgment based on the verdict of guilty under which appellant was sentenced to a term of not less than three nor more than five years in the state prison.

It appears from the evidence that appellant contacted William J. Raggio, the District Attorney of Washoe County, and stated to him that unless a vagrancy charge against him was dismissed he, appellant, would cause criminal charges of rape and furnishing liquor to a minor to be brought by the Attorney General against Raggio. This threat was made in the office of Frank

Petersen, the then attorney for appellant. The office had been wired for recording of conversations and this threat was recorded unbeknown at the time to appellant, and the recording thereof was played to the jury without objection. In fact, appellant states in his opening brief on appeal that he desired to have the recording admitted. Appellant offered no evidence to refute the commission of the actual crime with which he was charged.

The only error complained of which requires serious consideration is the court's denial of appellant's motion for mistrial.

Mistrial was claimed because of the following circumstances. The jury after being selected was ordered by the court to be kept in charge of the bailiff, who was sworn to keep the jurors together until the next meeting of the court, to suffer no person to speak to them or communicate with them, nor to do so himself on any subject connected with the trial, all pursuant to NRS 175.320.

After the state had rested and before the introduction of any evidence on behalf of the appellant, a bailiff in charge of the jury whispered to Mrs. Arlene Thomas, one of the jurors, that her husband wanted to know where she had put the gun. Telling him where it was, she asked why her husband wanted to know and the bailiff told her a threat had been made. At least one other juror heard this whispered conversation. When the related conversation became known to the court the presiding judge conducted an investigation outside the presence of the jury and ascertained and determined that no threat had been made. Appellant's attorney thereupon moved for a mistrial. Ruling thereon was reserved until the court examined Mrs. Thomas as to whether this matter had influenced her. She stated: "I would be fair in the decision regardless of any of the consequences." In answer to the court's question whether she would be in any way influenced, she said: "No, I don't think that would be the right thing to do." In explaining what she meant by her said statement "regardless of any of the consequences" she said: "Well,

I would follow the instructions regardless" and that she would accord to the defendant and the State of Nevada a true and fair and honest trial. The court thereupon called in the remainder of the jury advising them that there had been a communication made to Mrs. Thomas which certain of the jurors might have knowledge of. The court stated that it had made an inquiry and concluded that no threat had been made to Mrs. Thomas' husband or any member of the family. It then asked the jury if any one of them, under these circumstances, felt that he could not continue to be fair and impartial in the trial. Each juror upon being polled answered that he would be fair and impartial. The motion for mistrial was thereupon remade and denied.

Any private communication with a juror in a criminal case during a trial on any subject connected with the trial is deemed presumptively prejudicial. See Parsons v. State, 74 Nev. 302, 329 P.2d 1070.

Because of the aforesaid conversation between the bailiff and Mrs. Thomas, it became necessary for the court when apprised of the fact, to determine whether the communication to Mrs. Thomas by the bailiff related to any subject connected with the trial and if so whether Mrs. Thomas or any other member of the jury was prejudiced thereby.

In order to make such determination, the court pursued the procedure suggested in Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654. There the case was remanded to the District Court with directions to hold a hearing to determine whether the incidents complained of were harmful to the defendant and if after a hearing they were found to have been harmful, to grant a new trial. On remand the District Court held a hearing and found the incidents to be free from harm. When the case again came before the Supreme Court a new trial was ordered for the reason that on remand, the hearing conducted by the District Court was limited, and there was no exploration of the "entire picture" of the incident complained of. Remmer v. United States, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435.

It is to be noted that in the Remmer case the hearing was conducted after the return of the verdict, and the defendant therein had no knowledge of the incident which he contended had prejudiced a juror until after the verdict. In the present case the hearing took place before the case was submitted to the jury and even before the defense offered its evidence. Furthermore, in the court below every person connected with the incident was examined by the court in the presence of the appellant and his counsel, and each juror was apprised of the fact that no threat had been made. Thereafter each juror stated separately that he would act fairly and impartially with respect to the appellant and to the state. Each member of the jury when being selected had been sworn to answer truthfully any questions pertaining to his qualifications as juror. The fact that the jurors were not resworn during said subsequent examination is, in our opinion, immaterial.

Inasmuch as the statement made by the bailiff did not pertain to any subject connected with the trial, and all the jurors were so informed, it is questionable whether the private communication was presumptively prejudicial. Considering it as such, the lower court then had the duty to determine whether the evidence presented during its investigation and hearing independent of but during the main trial was sufficient to rebut any presumption of prejudice. See Johnson v. United States, 5 Cir., 207 F.2d 314. Such determination was a factual one. The lower court determined from such evidence that any presumption of prejudice was rebutted and that the communication to the juror did not prejudice any member of the jury. This determination is supported by substantial evidence and will not be disturbed.

Another error assigned related to the examination of Jackie Leigh Hitson and to an inquiry into the records of Dr. Vollert, her physician. We conclude that it is without merit because the evidence excluded was not material to the issues, that is to any of the elements

of extortion. It is not contended that the excluded evidence was relevant to impeachment.

Appellant contends that in testing the District Attorney's credibility, the failure to permit inquiry into his conduct with respect to another extortion case was prejudicial error. In view of the fact that the appellant offered no evidence to refute the commission of the actual crime with which he was charged and consented to the introduction in evidence of his recorded threat, any error of the trial court in this respect was clearly not prejudicial.

Appellant finally complains of the giving of certain instructions, all of which have been stock instructions used by the trial courts of this state for many years. We have examined the same and find that they, in no way, have prejudiced any substantial right of the appellant.

Affirmed.

PIKE, J., and CRAVEN, D. J., concur.

BADT, C. J., being absent on account of illness, the Governor designated Honorable Thomas O. Craven, Judge of the Second Judicial District Court, to sit in his stead.